UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 06 CV 5032

CARL THOMAS SASSAMAN,

              Plaintiff,

                                  **COMPLAINT**
                                  Jury Trial Requested

    -against-

DAVID GAMACHE, COMMISSIONER,
DUTCHESS COUNTY BOARD OF ELECTIONS, and
DUTCHESS COUNTY

              Defendant.

---

Plaintiff hereby alleges:

## JURISDICTION

1.   This action seeks enforcement of Plaintiff's rights pursuant to 42 U.S.C. §2000e

    *et. seq.*, and as such jurisdiction is provided by 28 U.S.C. §§1331 and 1343 (a)(3)

    and (4) and 42 U.S.C. §2000e-5 (f)(1) and (3).

## VENUE

2.   The conflict between the parties arose in Dutchess County, New York.

## PARTIES

3.   Plaintiff is a male adult resident of Dutchess County who at all times relevant

    hereto was employed by the Dutchess County Board of Elections.

4.   Defendant Gamache at all times relevant hereto is the Commissioner of the

1

Dutchess County Board of Elections which employed Plaintiff from January 2, 2003 to March 31, 2005 when he was compelled to resign.  He is sued in his official capacity.

## SUMMARY OF CLAIM

5.    Plaintiff was falsely accused of sexual harassment by a co-worker Michelle Brant Rather than conducting a full and fair investigation of the charges in accordance with the Dutchess County policy governing sexual harassment, Commissioner Gamache assumed that Plaintiff was guilty as charged because of his sex and discharged Plaintiff in violation of 42 U.S.C. §2000e-2(a)(1) and (2) protecting employees against discrimination based on sex.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.    Plaintiff filed a complaint with the New York State Division of Human Rights on or about June 29, 2005 alleging sex discrimination.

7.    On February 27, 2006 the Division issued its Determination and Order after Investigation finding no probable cause.

8.    Plaintiff on March 6, 2006 requested the EEOC to review the Division's decision.

9.    The EEOC on March 31, 2006 issued a decision adopting the Division's decision and notified plaintiff he had ninety (90) days in which to file suit.

10.   This action is filed within that 90-day time period.

## STATEMENT OF FACTS

11.   Plaintiff was employed by the Dutchess County Board of Elections as an Administrator and then demoted to Election Specialist.  He served from January

2

2003 until March 2005 when he resigned under circumstances described below.

12.     Michele Brant, an adult resident of Staatsburg, New York in Dutchess County, started work for the Dutchess County Board of Elections roughly 2 weeks after Plaintiff commenced employment.  She was employed as an Election Specialist who was promoted to Administrator in place of Plaintiff in December 2004..

13.     Plaintiff and Ms. Brant were co-workers and developed a work-place friendship.

14.     Plaintiff is 61 years old, has been married for over 30 years and has 4 grown children.

15.     Ms. Brant is in her mid-40's, married and the mother of 4 children.

16.     In July 2004 Ms. Brant informed Plaintiff that she was taking a long lunch and asked him could he cover for her.  Plaintiff accommodated her as requested.

17.     The next day Ms. Brant informed Plaintiff that she had met a person named Mike and that they would meet again in a week.

18.     Plaintiff did not know quite what to make of this information.

19.     In December 2004 Plaintiff was demoted to Election Specialist against his will for no good reason and Ms. Brant was assigned to his Administrator position.

20.     On January 29, 2005 Ms. Brant returned Plaintiff's telephone call in the evening and during the course of that conversation advised Plaintiff she had had various extra-marital affairs.  This information was unsolicited by Plaintiff.

21.     Ms. Brant referenced by name Mike, and 3 other men and said there were others. She said: "Lots of people are doing it."

22.     Ms. Brant reported to Plaintiff she had these affairs usually during long lunch

3

breaks, and preferred one-time encounters..

23.  Ms. Brant mentioned that Plaintiff would probably not be interested in a one-time encounter.  Plaintiff made it clear he was not interested.

24.  Ms. Brant said she was not ashamed of what she was doing but she did not want anyone else at work to know.

25.  Plaintiff assured her he would tell no one.

26.  The next work day Plaintiff told Ms. Brant that he did not think what she was doing was right and that he wanted nothing but a professional working relationship with her.

27.  About a month later, on February 24, 2005, Plaintiff was returning to work from his lunch break when he rounded the corner and encountered Ms. Brant embracing a county employee whom he knew was not her husband.

28.  Later that day Plaintiff told Ms. Brant that if she wanted to keep her affairs secret from people at the Board of Elections, she should not be fooling around near the work place.

29.  Ms. Brant was not pleased with this advice.

30.  About six days later on March 2, 2005 Plaintiff observed Ms. Brant embracing again with the same county employee during the lunch break.

31.  Plaintiff said nothing to Ms. Brant about this observation.

32.  On March 7, 2005 Plaintiff was summoned into the Office of Election Commissioner David Gamache.  Commissioner Gamache told Plaintiff he considered Ms. Brant a more valuable person; he told Plaintiff to go home and not

4

return to work; and told Plaintiff he should resign.

33.    Commissioner Gamache asked Plaintiff to take a lie detector test in violation of Labor Law §733 *et. seq.* and told Plaintiff that if he were innocent, he was getting "screwed."

34.    Ms. Brant had told Commissioner Gamache in substance that Plaintiff had written to her that "he desired to be with her," and that Plaintiff was stalking her during her lunch hour.

35.    Plaintiff met with Commissioner Gamache the next day and reported what Ms. Brant had told him about her extra-marital affairs.

36.    Plaintiff posited to Commissioner Gamache that the allegations being made by Ms. Brant were made because she was no longer comfortable having Plaintiff at the work place making it more difficult for her to carry on her elicit life style.

37.    Commissioner Gamache said he would look into these allegations. On March 10, 2005 Commissioner Gamache received a written complaint from Ms. Brant in which she stated in substance that Plaintiff told her he desired her; that Plaintiff wrote her notes that were "inappropriate and upsetting"; that Plaintiff insinuated he wanted to have an affair; that Plaintiff followed her; that she was "leery" about being alone with Plaintiff; that Plaintiff said "he felt we should take our relationship to the next level"; that Plaintiff pushed past her when she was outside at lunchtime with a male county worker; that Plaintiff sat in his car at lunchtime watching her; that Plaintiff made her "scared and uncomfortable" by his behavior; that Plaintiff opened a personal package received by her at the Board of Elections;

and Plaintiff asked Ms. Brant to meet her in private.

38.    These allegations are not true insofar as they insinuate that Plaintiff engaged in any inappropriate conduct.

38.    Commissioner Gamache referred this complaint to the Dutchess County Sheriff even though he did not consider it a criminal matter.  Detectives with the Sheriff's Department interviewed Plaintiff and Ms. Brant separately, and no one else.

39.    The detectives reported back to Commissioner Gamache who made no further inquiries to determine the truth of Ms. Brant's allegations.

40.    No criminal charges were filed against Plaintiff.

41.    Commissioner Gamache called Plaintiff on March 21 to tell him he was being terminated.

42.    When Plaintiff asked "why", Commissioner Gamache responded, "You have to go.  Michele has extensive experience with the legal profession and knows many attorneys.  If I do not get rid of you, I think she will sue.  Quite frankly, I would rather contend with you because no one will believe you because you are male and probably did what she said".

43.    On information and belief, Commissioner Gamache persuaded his fellow Commissioner Fran Knapp to sign-off on Plaintiff's termination.  Plaintiff had been hired by the Republican Commissioner Gamache, and concurrence by the Democratic Commissioner was required.

44.    After both Commissioners signed-off on Plaintiff's termination, he resigned.

45.    The allegations made by Ms. Brant warranted a thorough investigation by

6

Defendant especially since Ms. Brant had a motive to falsify her claim and no

similar allegations had ever been made against Plaintiff. The Dutchess County

Sexual Harassment Policy dated 11/1/93 was ignored by Commissioner Gamache

and the investigation required by that policy was never conducted.

46.  Defendant Gamache was too willing to believe that allegations by a female

employee of this nature against a male employee would not have been made

unless truthful

47.  Dutchess County failed to display proper control of Commissioner Gamache and

the Board of Elections by not assuring compliance with the County Sexual

Harassment Policy, and not requiring any management training on the topic of

Sexual Harassment.

### AS AND FOR A FIRST CAUSE OF ACTION

48.  Paragraphs 1 to 47 are hereby incorporated into this First Cause of Actions as if

fully set forth herein:

49.  Defendant discriminated against Plaintiff, a male employee, because of his sex in

violation of 42 U.S.C. §2000e-2(a)(1) by readily stereotyping Plaintiff as a

womanizer and concluding without a proper and thorough investigation that

Plaintiff acted in a sexually harassing manner toward Ms. Brant, thereby denying

him equal terms, conditions and privileges of employment resulting in his

discharge.

7

## AS AND FOR A SECOND CAUSE OF ACTION

50.    Paragraphs 1 to 47 are hereby incorporated into this Second Cause of Action as it

fully set forth herein.

51.    Defendant has classified Plaintiff as a male employee capable of and likely to

stalk and sexually harass Ms. Brant resulting in Plaintiff's discharge from

employment thereby denying him an employment opportunity and adversely

impacting his employment status because of his sex in violation of 42 U.S.C.

§2000e-2 (a)(2).

## DAMAGES

52.    Plaintiff has been humiliated and has suffered mental anguish by being discharged

for stalking and sexually harassing conduct without being afforded an opportunity

to vindicate himself and without doing anything inappropriate or unlawful and he

has lost income and benefits as a result of Defendant's discriminatory conduct as

stated herein.

**WHEREFORE**, Plaintiff seeks compensatory damages against Defendant in the amount

of One Million ($1,000,000.00) Dollars, and punitive damages in an appropriate amount to

penalize Defendant for the harm he has done, and the costs and disbursements of this action,

including attorney fees as determined by the Court..

Dated: June 26, 2006

Lanny E. Walter, Esq.
Bar Roll No. 102784
**WALTER, THAYER & MISHLER, P.C.**
Attorneys for Plaintiff
756 Madison Avenue
Albany, NY 12208
(518) 462-6753

8